IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | **MEMORANDUM DECISION AND ORDER ALLOWING VICTIMS OF A FINANCIAL OFFENSE TO ALLOCUTE AT SENTENCING** |
| vs. | |
| ANGELO M. DEGENHARDT,<br>Defendant. | Case No. 2:03-CR-00297 PGC |

This criminal fraud case is before the court for sentencing. The government has advised the court that several of the victims wish to make a statement — or "allocute" — at the sentencing hearing. Their request presents a question under the current rules of Criminal Procedure, which gives only victims of crimes of violence or sexual abuse a right of allocution.[1] This narrow provision, however, has been superceded by an Act of Congress — the Crime Victims Rights Act. The Act broadly guarantees victims of all crimes the right to allocute. Accordingly, the court will follow the congressional command and give the victims an opportunity to allocute at the sentencing.

[1] Fed. R. Crim. P. 32(i)(4)(B).



**BACKGROUND**

On May 9, 2005, defendant Angelo Degenhardt pleaded guilty to committing a fraudulent interstate transaction in violation of 15 U.S.C. § 77q. As part of his plea agreement, he confessed to obtaining money from investors without disclosing material facts surrounding those investments. He also misrepresented the security of the investors' funds, falsely promising that their money would be held in escrow accounts and that he would refund their money if they wanted it back.

Mr. Degenhardt and the government both agreed to a sentence of six-months of home confinement pursuant to Rule 11(c)(1)© of the Federal Rules of Criminal Procedure, subject to the approval of the court. The plea agreement also obligated Mr. Degenhardt to pay at least $2.4 million in restitution and such additional amount as the court might determine was appropriate.

After Mr. Degenhardt pleaded guilty, the court scheduled a sentencing hearing to determine whether to accept the plea with the stipulated six-month sentence and whether to order additional restitution. In preparation for that hearing, the U.S. Attorney's Office assisted the probation office in collecting restitution information from various victims. The office determined that a total of thirty-two victims had lost $3.8 million as a result of Mr. Degenhardt's fraud. Mr. Degenhardt agreed that this was the appropriate restitution figure.

The government then advised the court that several of the victims would be present in court during the sentencing hearing and that some of these victims wished to make a statement

directly to the court — or "allocute" at sentencing.[2] Their request creates an issue under the current Federal Rules of Criminal Procedure, which requires the court to give only victims of violent and sexual offenses an opportunity to allocute:

> Before imposing sentence, the court must address any victim of *a crime of violence or sexual abuse* who is present at sentencing and must permit the victim to speak or submit any information about the sentence.[3]

The court must therefore consider whether, despite this language, victims of financial crimes also have a right to address the court.

*All* crime victims now appear to have the right to participate in sentencing hearings under the recently enacted Crime Victims Rights Act (CVRA).[4] The CVRA directs that "a crime victim" has the "the right to be reasonably heard at . . . sentencing."[5] The Act is not limited to victims of violent and sexual crimes, but rather extends to any victim of "a Federal offense."[6] This broad language appears to conflict with the narrower provision in the rules of criminal procedure.

---

[2] The term "allocute" is now commonly used to describe a victim's oral statement at sentencing. *See* BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 45 (2d ed. 1995).

[3] Fed. R. Crim. P. 32(i)(4)(B) (emphasis added).

[4] The Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act, Pub. L. No. 108-405 (codified at 18 U.S.C. § 3771 (2004)). *See generally* Jon Kyl et al., *On the Wings of Their Angels: The Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act*, 9 LEWIS & CLARK L. REV. 581 (2005).

[5] 18 U.S.C. § 3771(a) & (a)(4).

[6] 18 U.S.C. § 3771(e) (defining "crime victim").

Perhaps the court could duck the question of whether the CVRA supercedes the rules' current limits by concluding that the rules at least *permit* the court to exercise discretion to allow allocution by all victims. A strong argument can be made that courts have discretion to hear at sentencing from any person who might provide useful information, including victims of financial crimes.[7] As the Federal Criminal Rules Advisory Committee explained in 1994 (before any of the victim allocution provisions were added into the rules or statutory law), "Under present practice, the court may permit, but is not required to hear, victim allocution before imposing sentence."[8] This discretionary authority stems from 18 U.S.C. § 3661, which provides: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This directive plainly permits a court to hear from financial crimes victims about their victimizer's conduct before imposing an appropriate sentence.

But treating victim allocution as a mere discretionary matter for the courts would leave questions open for debate in future cases. This uncertainty poses problems for prosecutors and the victim/witness unit in this district, who are frequently asked by victims whether they will

---

[7] *But cf. United States v. Fortier*, 242 F.3d 1224 (10th Cir. 2001), *cert. denied*, 534 U.S. 979 (2001)(finding "an absence of authority" on the issue of whether counsel for victims can participate in a sentencing hearing, and raising "misgivings" about the practice where the government had agreed not to argue for the very issues the victims' counsel did), *overruled by statute*, 18 U.S.C. § 3771(d)(1) (giving crime victims and their "lawful representative" the power to assert rights, including the right to be reasonably heard at sentencing).

[8] Fed. R. Crim. P. 32 advisory committee's note, 1994 am., subdiv. (e).

have the chance to speak at sentencing. Crime victims deserve to know whether, like criminal defendants, they can always address the court at sentencing. The court will, therefore, give a firm answer to this question.

The CVRA also suggests it is desirable to reach this question. The CVRA instructs that the court "shall ensure" the crime victims are afforded their rights under the Act.[9] It is therefore appropriate for this court to announce, as part of its efforts to ensure that victims receive their rights, that the victims in this case must be allowed to address the court at sentencing.

**UNDER THE CRIME VICTIMS RIGHTS ACT, VICTIMS OF ALL CRIMES HAVE A RIGHT TO PERSONALLY ADDRESS THE COURT.**

Congress recently commanded that all crime victims have the right to be "heard" at sentencing. Congress conferred this right through the Crime Victims Rights Act, which was designed to be a "broad and encompassing" statutory victims' bill of rights.[10] These rights were intended to make victims "an independent participant in the proceedings."[11] Thus, the CVRA lists a series of victims' rights, including the right at issue here — the right to be heard at sentencing:

A crime victim has the following rights: . . .

> The right to be reasonably heard at any public proceeding in the district court involving . . . sentencing . . . .[12]

---

[9] 18 U.S.C. § 3771(b).

[10] 150 CONG. REC. S4261 (daily ed. Apr. 22, 2004) (statement of Sen. Feinstein).

[11] 150 CONG. REC. S10,911 (daily ed. Oct. 9, 2004) (statement of Sen. Kyl).

[12] 18 U.S.C. § 3771(a) & (a)(4).

Obviously, this provision extends to crime victims a right to be heard during sentencing. In the context of this case, then, three issues arise from this language: first, whether the right to be heard extends to victims of non-violent crimes, such as the financial crime at issue here; second, whether the right to be reasonably heard at sentencing includes a right to be heard orally; and third, whether the right to be heard is at the discretion of the court. Each of these questions will be addressed in turn.

***1. The CVRA Extends Rights to All Crime Victims***

The CVRA plainly extends victims' rights beyond those found in the current criminal rules by giving a right to be heard to *all* victims. Rule 32(i) confers a right to be heard to "any victim of a crime of violence or sexual abuse."[13] In contrast, the CVRA extends its rights more broadly to all crime victims, that is, to any "person directly and proximately harmed as a result of the commission of a Federal offense."[14] The CVRA definition is not limited to certain kinds of crimes. To the contrary, the sponsors of the CVRA described this as "an intentionally broad definition because *all* victims of crime deserve to have their rights protected."[15]

The question thus arises as to whether the court should follow the CVRA's broad command to allow victims all of crimes to be heard or Rule 32(i)'s narrower command that only victims of violent crime have this right. As a policy matter, the CVRA's broad command makes considerable sense. There is no sound reason for limiting victim allocution to only victims of

---

[13] Fed. R. Crim. P. 32(i)(4)(B).

[14] 18 U.S.C. § 3771(e).

[15] 150 CONG. REC. S10,912 (daily ed. Oct. 9, 2004) (statement of Sen. Kyl) (emphasis added).

violent crimes.[16] As Professor Jayne Barnard explains, "victims of [economic] crimes often feel just as violated, anxious, confused, betrayed, and depressed as do victims of violent crimes."[17] Senator Hatch has also described how the distinction between the two kinds of offenses can be artificial and unrelated to the purposes served by victims' rights:

> I believe we must tread carefully when assigning . . . rights on the arbitrary basis of whether the legislature has classified a particular crime as "violent" or "non-violent." Consider, for example, the relative losses of two victims. First, consider the plight of an elderly woman who is victimized by a fraudulent investment scheme and loses her life's savings. Second, think of a college student who happens to take a punch during a bar fight which leaves him with a black eye for a couple of days. I do not believe it to be clear that one of these victims is more deserving of . . . protection than the other.[18]

Presumably because of reasons like these, in 2004 the Criminal Rules Advisory Committee proposed amending the rules to extend a right of allocution to all victims.[19]

More important than policy considerations, however, is the simple fact that a broad congressional mandate in a statute must take precedence over a narrower court rule. It is settled law that a "statute takes priority over the procedural rules adopted by the Court for the orderly

---

[16] *See generally* Jayne W. Barnard, *Allocution for Victims of Economic Crimes*, 77 NOTRE DAME L. REV. 39 (2001).

[17] *Id.* at 41.

[18] S. REP. NO. 105-409, at 42 (1998) (discussing constitutional amendment protecting victims rights); *see also* Leslie Eaton, *Assault with a Fiscal Weapon: As Swindlers Branch Out, Victims Want to Be Heard*, N.Y. TIMES, May 25, 1999, at C1 (giving examples of financial crime victims harmed more severely than violent crime victims).

[19] *See infra* notes 25–28 and accompanying text.

transaction of its business."[20] Here, the limits in Rule 32 of the Federal Rules of Criminal Procedure must give way to the CVRA's command that *all* victims have the right to allocute.

For all these reasons, the right to be heard at sentencing extends to all victims of crime — including the victims of Mr. Degenhardt's financial crimes in this case.

***2. The CVRA Gives Victims a Right to Personally Address the Court at Sentencing***

Because the victims of Degenhardt's scheme have a right to be heard at sentencing, the next question is *how* they should be heard. The CVRA gives crime victims the right to be "reasonably heard" at sentencing. One possible interpretation of this phrase is that victims have a right to be heard via a *written* submission to the court, such as a victim impact form. Such an interpretation would rely on the fact that, in some other contexts, courts have construed a right "to be heard" as mandating no more than an opportunity to be heard in writing.[21] Such a construction, however, would defy the intentions of the CVRA's drafters, ignore the fact that defendants and prosecutors make oral statements at sentencing, and disregard the rationales underlying victim allocution. For all these reasons, the court concludes that the CVRA gives victims the right to speak directly to the judge at sentencing.

---

[20] *Hibbs v. Winn*, 542 U.S. 88, 99–100 (2004) (internal quotation marks omitted).

[21] *See, e.g.*, *Jergens v. Gallop*, 40 So. 2d 775, 775 (Fla. 1949) (holding that an appellant's right to be "heard" on appeal is satisfied by submitting a brief); *Watson v. Claughton*, 34 So. 2d 243, 246 (Fla. 1948) (construing the state attorney general's right to be "heard" under Florida's Declaratory Judgment Act as satisfied once the attorney general filed a petition for intervention); *Schmidt v. Boyle*, 74 N.W. 964, 965 (Neb. 1898) (construing right under Nebraska's constitution "to be heard" and holding that "[t]he word 'heard' was not employed by the framers of the constitution to indicate that an oral presentation of a controversy to the court should not be refused, but was intended in the sense of 'review'").

The drafters of the CVRA left no doubt that they intended their handiwork to grant victims a right to make an oral statement at sentencing. One of the CVRA's legislative sponsors flatly explained that the CVRA gives victims the right to address the court in person:

> [The CVRA] provides victims the right to reasonably be heard at any public proceeding involving release, plea, or sentencing. This provision is intended to allow crime victims *to directly address the court in person*. It is not necessary for the victim to obtain the permission of either party to do so. This right is a right independent of the government or the defendant that allows the victim to address the court. To the extent the victim has the right to independently address the court, the victim acts as an independent participant in the proceedings. . . .
>
> It is not the intent of the term "reasonably" in the phrase "to be reasonably heard" to provide any excuse for denying a victim the right to appear in person and directly address the court. *Indeed, the very purpose of this section is to allow the victim to appear personally and directly address the court. This section would fail in its intent if courts determined that written, rather than oral communication, could generally satisfy this right.* On the other hand, the term "reasonably" is meant to allow for alternative methods of communicating a victim's views to the court when the victim is unable to attend the proceedings. Such circumstances might arise, for example, if the victim is incarcerated on unrelated matters at the time of the proceedings or if a victim cannot afford to travel to a courthouse. In such cases, communication by the victim to the court is permitted by other reasonable means.[22]

Obviously, the drafters of the CVRA thought they were giving crime victims the right to be heard in open court. To be sure, legislative history cannot change the meaning of a statute.[23] But when, as here, a statute can be read in various ways, "courts appropriately may refer to a statute's legislative history to resolve statutory ambiguity."[24]

---

[22] 150 CONG. REC. S10,911 (daily ed. Oct. 9, 2004) (statement of Sen. Kyl).

[23] *Ardestani v. I.N.S.*, 502 U.S. 129, 135–36 (1991).

[24] *Patterson v. Shumate*, 504 U.S. 753, 761 (1992) (internal quotation marks omitted).

In addition to the drafters' statements, the background against which Congress legislated makes it clear that the CVRA created a right to be heard in person. In 2004 when Congress was considering the CVRA, Rule 32(i) already extended to victims of violent crimes a right to speak at sentencing; with respect to other victims, the Criminal Rules Advisory Committee was at that very time already circulating a proposed amendment that Rule 32(i)'s right to speak be extended to *all victims*.[25] The Committee proposed that before a court imposed a sentence, it would have to "address any victim of a felony, not involving violence or sexual abuse, who is present at sentencing and . . . permit the victim to speak or submit any information about the sentence."[26] This language is virtually identical to the rule's language giving defendants a right to be heard at sentencing,[27] language that has been uniformly interpreted as guaranteeing defendants a right to speak.[28] Given that a right to be heard in person already existed for violent crime victims and

---

[25] Report of the Advisory Comm. on Criminal Rules to the Standing Comm. on Rules of Practice and Procedure, app. C (May 18, 2004) [hereinafter 2004 Advisory Comm. Rep.].

[26] 2004 Advisory Comm. Rep., *supra* note 25, app. C, at 3.

After Senate approval of the CVRA, the Committee withdrew the proposed rule change to consider a complete package of victim-related reforms. Recently the Committee has tentatively proposed that Rule 32(i) should once again be amended to give *all* victims a right to be heard, although the Committee did so merely by way of tracking the statutory language conferring a right "to be reasonably heard." See Memorandum from Prof. Sara Sun Beale, Report, Criminal Rules Advisory Comm. to Members of the Criminal Rules Advisory Comm. (Sept. 19, 2005) (forwarded to the Standing Comm. by action taken on Oct. 25, 2005).

[27] *See* Fed. R. Crim. P. 32(i)(4) ("Before imposing sentence, the court must . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence . . . .").

[28] *See infra* note 45 (collecting cases reversing sentences for failure to give a defendant his right of allocution).

It is somewhat curious that the proposed Advisory Committee Notes to the proposed rule change seemed to treat the victim's right to speak as discretionary. *See* 2004 Advisory Comm.

was in the process of being extended to all victims, it would make little sense for Congress to have enacted a more limited right to be heard only through a written communication. This would have constituted a retrenchment from then-existing rights, rather than the expansion that Congress so obviously envisioned. Congress is assumed to be "aware of existing law when it passes legislation."[29] Based on this presumption, the court will not construe the CVRA as retrenching then-existing rights.

In deciding whether victims have a right to speak at a sentencing hearing, perhaps the most important consideration is that the other participants will have a chance to speak. Since the CVRA was intended to give victims participatory rights in the sentencing process, victims should have the same rights as the other actors.

A defendant's right to speak at sentencing is well entrenched in the law. For many centuries, the defendant had the right at common law to personally address the judge.[30] As the Supreme Court explained in its 1961 decision *Green v. United States*, "As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal."[31] *Green* therefore instructed federal trial courts to directly

---

Rep., *supra* note 25, app. C, at 5 ("In a particular case, the court may permit, or require some or all of the victims to present their information in the form of written statements."). Perhaps the Committee was referring to situations involving numerous victims, because the language it copied from the defendant allocution provision had a well-settled interpretation of requiring an oral presentation.

[29] *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990).

[30] *See generally* 3 CHARLES ALAN WRIGHT, NANCY J. KING & SUSAN R. KLEIN, FEDERAL PRACTICE AND PROCEDURE § 525, at 152 (3d ed. 2004).

[31] *Green v. United States*, 365 U.S. 301, 304 (1961).

address a defendant and issue him a personal invitation to speak.[32] *Green*'s holding was folded into the federal rules in 1966, with language requiring courts to "address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment."[33] Defense counsel, too, were "afford[ed] . . . an opportunity to speak on behalf of the defendant."[34]

In 1975, Congress amended the federal rules to provide that "[t]he attorney for the government shall have an equivalent opportunity to speak to the court."[35] The underlying idea was obviously that if one side of the case — the defense side — was speaking directly to the judge, so too should the other side. Fairness demanded equal treatment for prosecutors.

The CVRA takes this logic one step further, recognizing that the sentencing process cannot be reduced to a two-dimensional, prosecution versus defendant affair.[36] Instead, the CVRA treats sentencing as involving a third dimension — fairness to victims — requiring that they be "reasonably heard" at sentencing. As in most areas of law, what is reasonable depends on all the circumstances.[37] At a sentencing hearing, the other participants will speak directly to

---

[32] *Id.* at 305.

[33] Fed. R. Crim. P. 32(a)(1) (1966).

[34] *Id.*

[35] Fed. R. Crim. P. 32(a)(1) (1975).

[36] *See generally* Douglas Evan Beloof, *The Third Model of Criminal Process: The Victim Participation Model*, 1999 UTAH L. REV. 289.

[37] *See, e.g.*, *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985) (holding that the reasonableness of a search or seizure "depends upon all the circumstances surrounding the search or seizure"); *Summum v. City of Ogden*, 297 F.3d 995, 1003 (10th Cir. 2002) (holding

the judge. Read against this backdrop, the CVRA commands that victims should be treated equally with the defendant, defense counsel, and the prosecutor, rather than turned into a "faceless stranger."[38]

A final reason for reading the CVRA as conferring a right to allocute personally at sentencing stems from the purposes underlying victim allocution. As Professor Jayne Barnard has nicely explained, victim allocution has at least three goals:

> (1) to permit the victim to regain a sense of dignity and respect rather than feeling powerless and ashamed; (2) to require defendants to confront — in person and not just on paper — the human consequences of their illegal conduct; and (3) to compel courts to fully account in the sentencing process for the serious societal harms — harms that go well beyond money — that economic crimes often impose.[39]

These purposes are ill served by mere judicial review of paper pleadings. Many victims of economic crimes have reported that expressing their opinion only in writing was inadequate.[40] These victims will be disempowered if they are required to sit silently through a sentencing proceeding while the other participants present their cases directly to the judge. In fact, victims may actually suffer "secondary harm"[41] from the legal system if they are not treated equally with the defendant. Moreover, some victims want an opportunity to force defendants to confront the

---

that the reasonableness of speech restrictions depends on "consideration of 'all the surrounding circumstances'").

[38] *Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (internal quotation marks omitted).

[39] Barnard, *supra* note 16, at 41.

[40] *Id.* at 52.

[41] Beloof, *supra* note 36, at 294.

human toll of their crimes. Such confrontation is only possible in open court, where the victim has an opportunity to stand face-to-face with her victimizer and explain the pain that flowed from the crime.[42]

This case illustrates well the devastating effects of a financial crime and the need for hearing directly from victims. As a result of defendant Degenhardt's fraud, thirty-two victims lost $3.8 million. Many of the victims suffered more than financial losses. According to victim impact information provided to the court, two victims have recently suffered divorces, caused in no small part by the stress placed on those marriages from the crime. Another victim has been unable to attend graduate school because Mr. Degenhardt swindled her out of the money she was saving for tuition. Several others have spent years trying to rebuild their reputations after having vouched for Mr. Degenhardt's reliability. Victims such as these can be "reasonably heard" only if the court takes the time to listen to their statements in court.

For all these reasons, the CVRA's right to be "reasonably heard" gives victims the right to make an in-court statement at sentencing.

---

[42] Because an important purpose of victim allocution is to give a victim a chance to face her victimizer, this court cannot agree with another district court's conclusion that in-court victim allocution at one defendant's sentencing eliminates the need to allow victim allocution when a co-defendant is sentenced. *See United States v. Leichner*, Case No. CR-03-568-JW (C.D. Cal. Feb. 28, 2005), *petn. for writ of mandamus pending sub nom. Kenna v. U.S. Dist. Court for the C.D. of Cal.*, No. 05-73467 (9th Cir. 2005). Such a conclusion also appears at odds with the CVRA's command that victims have the right to be heard "at *any* public proceeding in the district court involving . . . sentencing." 18 U.S.C. § 3771(a) (emphasis added).

### *3. A Victim's Right to Be Heard Is Not Remitted to the Court's Discretion*

One last issue remains to be considered: whether a victim's right to be heard is vested in the court's discretion or is automatic whenever a victim requests the right. It is clear that the CVRA extends a mandatory right for at least three reasons.

First, the CVRA is written in terms of absolutes. Thus, the Act begins with the flat statement, "A crime victim *has* the following rights . . . ."[43] After describing those rights, the Act goes on to direct that "the court *shall ensure* that the crime victim is afforded the rights described in [the Act]."[44] This is mandatory, not precatory, language.

Second, courts cannot readily determine in advance when to exercise discretion to hear directly from a victim. Many courts have recognized the difficulty of assessing what effect a defendant's allocution has on the court's sentencing decision. As a result, failure to afford a defendant a right of allocution is presumed to have been prejudicial "because the impact of the omission on a discretionary decision is usually enormously difficult to ascertain."[45] The same can be said of victim's allocution. Indeed, it may be even more difficult for a court to determine

---

[43] 18 U.S.C. § 3771(a) (emphases added).

[44] 18 U.S.C. § 3771(b) (emphasis added).

[45] *United States v. De Alba Pagan*, 33 F.3d 125, 129 (1st Cir. 1994). The Circuits generally agree that prejudice is automatically presumed whenever a defendant is denied his right of allocution. *See United States v. Muniz*, 1 F.3d 1018, 1025 (10th Cir. 1993), *cert. denied*, 510 U.S. 1002 (1993); *United States v. Maldonado*, 996 F.2d 598, 599 (2d Cir.1993); *United States v. Barnes*, 948 F.2d 325, 332 (7th Cir. 1991); *United States v. Phillips*, 936 F.2d 1252, 1256 (11th Cir. 1991); *United States v. Walker*, 896 F.2d 295, 301 (8th Cir. 1990); *United States v. Thomas*, 875 F.2d 559, 561 (6th Cir. 1989), *cert. denied*, 493 U.S. 867 (1989); *United States v. Posner*, 868 F.2d 720, 724 (5th Cir. 1989); *United States v. Buckley*, 847 F.2d 991, 1002 (1st Cir.1988), *cert. denied*, 488 U.S. 1015 (1989); *United States v. Navarro-Flores*, 628 F.2d 1178, 1184 (9th Cir.1980).

in advance what effect a victim's statement might have on a defendant's sentence. In contrast to criminal defendants who always have counsel by their sides, many victims will lack legal assistance and the legal acumen to draft pleadings. If a court acts precipitously based only on written materials in front of it, it may inadvertently prevent a victim from providing important information.

Finally, even if a victim has nothing to say that would directly alter the court's sentence, a chance to speak still serves important purposes. As the First Circuit has pithily explained, "allocution is both a rite and a right."[46] Part of the rite is a chance for the participants — the defendant, the prosecution, and now the victim — to have their say before sentence is imposed. That process is short-circuited if one of the participants — the victim — is denied an opportunity to speak. The President's Task Force on Victims of Crime explained this point nicely in concluding that

> every victim must be allowed to speak at the time of sentencing. The victim, no less than the defendant, comes to court seeking justice. When the court hears, as it may, from the defendant, his lawyer, his family and friends, his minister, and others, simple fairness dictates that the person who has borne the brunt of the defendant's crime be allowed to speak.[47]

In response to all this, it might be argued that courts must have discretion on whether to hear from victims because some cases (particularly financial fraud cases) may involve hundreds or thousands of victims. If a court is required to hear from all of these victims, the argument runs, then the courts will be overwhelmed. This hypothesis, however, is not borne out by the

---

[46] *De Alba Pagan*, 33 F.3d at 129.

[47] PRESIDENT'S TASK FORCE ON VICTIMS OF CRIME, FINAL REPORT 77–78 (1982).

actual experience in the many state courts that give victims a right to allocute at sentencing. Many states give victims of financial crimes a right to be heard at sentencing.[48] The reports from these states indicate that proceedings there have not been significantly prolonged.[49] And many victims will not wish to speak at sentencing hearings. The available empirical evidence is that, if

---

[48] *See* ALA. CODE § 15-23-72 (allowing victims to be heard at any sentencing proceeding); ALASKA STAT. § 12.55.023(b) (allowing for sworn victim impact testimony or an unsworn victim presentation at sentencing); ARIZ. REV. STAT. ANN. § 13-702(E) (requiring the court to consider victim impact testimony at an aggravation or mitigation proceeding); CAL. PENAL CODE § 1191.1 (permitting victim to appear and reasonably present views concerning the crime, the person responsible, and the need for restitution); CAL. PENAL CODE § 679.02(a)(3); CONN. GEN. STAT. ANN. § 54-91c.(b) (permitting testimony of victim of a class A, B, or C felony concerning the facts of the case, the appropriateness of any penalty and the extent of any injuries, financial losses, and loss of earnings directly resulting from the crime); FLA. STAT. ANN. § 921.143(2)(a) (permitting victim impact testimony at sentencing, limited to the facts of the case, the extent of any harm, and "any matter relevant to an appropriate disposition of the case"); HAW. REV. STAT. ANN. § 706-604(3) (permitting victim impact testimony at sentencing); IND. CODE ANN. § 35-35-3-5(b) (same); IOWA CODE ANN. § 915.21 (same); LA. REV. STAT. ANN. § 46:1844K (same); ME. REV. STAT. ANN. tit. 17-A, § 1174 (same); MASS. ANN. LAWS ch. 279, § 4B (same); MICH. COMP. LAWS ANN. § 780.765 (same); MINN. STAT. ANN. § 611A.038(a) (same — subject to "reasonable limitations as to time and length"); NEV. REV. STAT. ANN. § 176.015(3) (permitting testimony of a victim concerning the crime, the person responsible, the impact of the crime on the victim, and the need for restitution); N.J. STAT. ANN. § 39:4-50.11 (permitting victims to submit an oral statement to be considered in deciding sentencing terms); N.M. STAT. ANN. § 31-26-4(G) (permitting victim impact testimony at sentencing); OHIO REV. CODE ANN. § 2929.19 (same); R.I. GEN. LAWS § 12-28-3(a)(11) (permitting victim impact testimony at sentencing where the defendant was found guilty following a trial); S.C. CODE ANN. § 16-3-1550(F) (permitting victim impact testimony at sentencing); S.D. CODIFIED LAWS § 23A-28C-1(8) (same); UTAH CODE ANN. § 77-38-4(7) (same); VT. STAT. ANN. tit. 13, § 5321 (same); WASH. REV. CODE ANN. § 9.94A.500(1) (permitting victims to make "arguments" at sentencing); W. VA. CODE § 61-11A-2(b) (permitting victim impact testimony at sentencing); WIS. STAT. ANN. § 972.14(3)(a) (same); WYO. STAT. ANN. § 7-21-102 (same); *see also* GA. CODE ANN. § 17-10-1.2(a) (permitting victim impact testimony in the discretion of the sentencing judge, with limitations as to subject matter). *See generally* Barnard, *supra* note 16, at 58 n.117 (collecting citations on this issue).

[49] *See* Barnard, *supra* note 16, at 66 n.147 (collecting citations on this point); PEGGY M. TOBOLOWSKY, CRIME VICTIM RIGHTS AND REMEDIES 95–96 (2001) (same).

given the chance to do so, only somewhere between 3% to 13% of victims in all cases will make an oral statement at sentencing.[50] In financial fraud cases involving hundreds of victims, it seems reasonable to think that victim participation rates may be somewhat lower. In addition, courts obviously retain the power to place reasonable limits on how long a victim can speak,[51] just as they can limit the length of a defendant's presentation.[52] And finally, if there were ever a case with many victims that truly threatened to interfere with a court's ability to function, the CVRA itself solves the problem. In cases involving overwhelming numbers of victims, the CVRA allows courts to fashion a reasonable alternative procedure:

> In a case where the court finds that the number of crime victims makes it impracticable to accord all of the crime victims the rights described in subsection (a), the court shall fashion a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong proceedings.[53]

For all these reasons, the fear that courts may be overwhelmed by in-court victim impact statements is illusory and provides no basis for treating the CVRA's command that all victims be heard at sentencing as something committed to the courts' discretion.

---

[50] *See* TOBOLOWSKY, *supra* note 49, at 96 (citing EDWIN VILLMOARE & VIRGINIA V. NETO, U.S. DEP'T OF JUSTICE, VICTIM APPEARANCES AT SENTENCING HEARINGS UNDER THE CALIFORNIA VICTIMS' BILL OF RIGHTS 42 (1987); Edna Erez & Pamela Tontodonato, *The Effect of Victim Participation in Sentencing on Sentencing Outcome*, 28 CRIMINOLOGY 451, 455 (1990); Maureen McLeod, *An Examination of the Victim's Role at Sentencing: Results of a Survey of Probation Administrators*, 71 JUDICATURE 162, 163 (1987)) .

[51] Barnard, *supra* note 16, at 66.

[52] *See Ashe v. North Carolina*, 586 F.2d 334, 336–37 (4th Cir. 1978) ("This is not to say that a defendant's right to address the sentencing court is unlimited. The exercise of his right may be limited both as to duration and as to content. He need be given no more than a reasonable time; he need not be heard on irrelevancies or repetitions.").

[53] 18 U.S.C. § 3771(d)(2).

*4. No Need to Determine the Scope of a Victim's Right to "Fairness"*

For the reasons just explained, the CVRA's right "to be reasonably heard" at sentencing guarantees all victims a chance to orally allocute before the sentencing judge. In light of this conclusion, there is no need to explore here whether victims would also have exactly the same right under the CVRA's command that victims must be "treated with fairness."[54] This broad right might well give victims a chance to speak at sentencing, because it is designed to guarantee that victims receive "due process" in all criminal proceedings.[55] Due process for victims would seem to require that victims no less than defendants and prosecutors be given a chance to speak at sentencing. This conclusion, however, is not necessary to resolve the question currently before the court. This validity of this conclusion can therefore await another day.

**CONCLUSION**

Under the CVRA, the victims of Mr. Degenhardt's crimes have the right to allocute at the sentencing hearing.

SO ORDERED.

DATED this 21st day of December, 2005.

BY THE COURT:

Paul G. Cassell
United States District Judge

---

[54] 18 U.S.C. § 3771(a)(8).

[55] *See* 150 CONG. REC. S10,911 (daily ed. Oct. 9, 2004) (statement of Sen. Kyl) ("This [fairness] provision is intended to direct government agencies and employees, whether they are in the executive or judicial branches, to treat victims of crime with the respect they deserve and to afford them due process.").